IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SHIRLEY CLAYTON,

        Plaintiff,

vs.                                                     No. CIV 07-0680 JB/LAM

PIONEER BANK,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion for Partial Summary Judgment, filed February 14, 2008 (Doc. 29)("Motion"). The Court held a hearing on June 30, 2008. The primary issue is whether Plaintiff Shirley Clayton is entitled to partial judgment on the issue of Defendant Pioneer Bank's liability for violation of the American with Disabilities Act ("ADA") and the New Mexico Human Rights Act ("NMHRA"). Because Clayton failed to show that there is no genuine issue of material fact as to all elements of her prima-facie case, because Pioneer Bank has presented a legitimate, nondiscriminating reason for its termination of Clayton, because there is a genuine issue of material fact whether that reason was a pretext for terminating her because of her disability, and because there is a genuine issue of material fact whether Clayton's absence was an undue burden on Pioneer Bank, the Court will deny in part Clayton's motion for partial summary judgment. Clayton is entitled to summary judgment on Pioneer Bank's defense of undue burden or hardship.

## FACTUAL BACKGROUND

Pioneer Bank hired Clayton as an employee, and she began work for Pioneer Bank in May of 1999. <u>See</u> Motion ¶ 1, at 2; Memorandum Brief in Opposition to Plaintiff's Motion for Summary

Judgment ¶ 1, at 2, filed March 3, 2008 (Doc. 32)("Response").  In November of 2005, Clayton

began working as a supervisor in Pioneer Bank's check-processing department.  The job title for her

position, at the time of her heart attack, was Statement Preparation Supervisor.  See Affidavit of

Christopher Palmer ¶ 11, at 2 (executed March 3, 2007)("Palmer Aff.").

      In her years of service working for Pioneer Bank, Clayton was an exemplary employee.  She

rarely used any sick or personal leave.  She performed all the regular duties of her position and all

additional duties asked of her.  See First Amended Complaint for Employment Discrimination in

Violation of the Americans with Disabilities Act and New Mexico Human Rights Act ¶¶ 1-5, at 1-2,

filed July 30, 2007 (Doc. 3)("Complaint").  Pioneer Bank admits that Clayton was considered a good

employee and did not abuse sick- or personal-leave time, and that she performed the duties of her

position until November 25, 2005.  See Response ¶ 1, at 2.

      On November 25, 2005, Clayton suffered a heart attack.  See Motion ¶ 2, at 2; Response ¶

2, at 2.  She underwent heart surgery, and her physician subsequently placed her under medical

restrictions that prevented her from returning to work.  See Complaint ¶ 6, at 2; Response, Exhibit

B, Physician's Certificate at 1 (dated January 4, 2006)(indicating that Clayton is "suffering from a

serious health condition" and is not anticipated to return to work for four months).

      Clayton contends that Pioneer Bank placed her on leave under the Family Medical Leave Act

("FMLA") until February 28, 2006.  See Complaint ¶ 7, at 2; Motion, Exhibit 2, Letter from Laura

Smith, Human Resource Director of Pioneer Bank to Shirley Clayton at 1 (dated November 29,

2005). While Pioneer Bank does not believe that Clayton has accurately characterized its procedural

mechanisms associated with employees' requests for leave under the Family Medical Leave Act of

1993 ("FMLA"), 29 U.S.C. §§ 2601-2654, Pioneer Bank's policies and procedures provide that an

employee may request leave under the FMLA.  See Response ¶ 3, at 3; Palmer Aff. ¶ 9, at 2.  Leave is then approved or not, depending on the factual circumstances, for up to twelve weeks in any twelve-month period.  See Palmer Aff. ¶ 9, at 2.

In February of 2006, Clayton's doctor, Dr. Vega, told her that she would need to take six months off, and be incapacitated until at least August of that year.  See Motion, Exhibit 3, Physician's Certification at 1 (dated February 22, 2006)(stating "incapacitated for 6 mo or more"); Response ¶ 7, at 3-4.   Clayton relayed this information to Lara Smith, Pioneer Bank's Human Resources Manager.  See Complaint ¶ 8, at 2; Physician's Certification at 1-2 (advising that Clayton is incapacitated from work for at least 6 months because of shortness of breath secondary to her heart condition).

Clayton exhausted her FMLA leave.  Clayton contends that, on March 1, 2006, Pioneer Bank placed her on short-term disability leave, which was set to expire at the end of August, the same month that she was expected to return to work.  See Complaint ¶ 9, at 2; Motion, Exhibit 4, Payroll Change Notice at 1 (indicating date of change: March 3, 2006).  Clayton contends that Pioneer Bank awarded short-term disability benefits using the same criteria it employed to determine if an employee was entitled to long-term disability.  See Exhibit 5 to Motion, Testimony of Chris Palmer at 128:25-129:8 (undated).  Pioneer Bank denies that it placed Clayton on short-term disability leave on March 1, 2006.  See Response ¶ 5, at 3.  Pioneer  Bank concedes, however, that it provides its employees with a short-term disability payment insurance benefit, but maintains that the benefit is not guaranteed leave.  See id; Palmer Aff. ¶¶ 16-17, 2-3; Response, Exhibit A, Pioneer Employee Manual at 15-16.

Pioneer Bank's Employee Manual explains:

**Short-Term Disability**

Pioneer does not provide group insurance coverage for short-term disability.  It does, however, from time to time, at its sole discretion, give employees payments for a portion of income lost while they are totally or partially disabled but have not yet met the 180 day elimination period set forth in Pioneer's Group Long-Term Disability Insurance Policy.

If you become totally or partially disabled and, but for the 180 day elimination period would be eligible for long-term disability insurance coverage, you may obtain a  .  . . "Certification of Health Care Provider" from Human Resources  . . . . [which] certifies that you are totally or partially disabled due to sickness or injury and require the attendance of a physician. . . .  The CEO of Pioneer will make the final determination as to whether or not you will be paid for short-term disability.  As guidance in making this final decision, the CEO of Pioneer will refer to all of the requirements for disability coverage contained in Pioneer's Group Long-Term Disability Insurance Policy.   Short-term disability payments will under no circumstances be paid longer than 180 days. . . . Total or partial short-term disability shall have been deemed to begin no earlier than the date the employee is certified by a physician for the disabling condition and is deemed by the physician to be totally or partially disabled.

Exhibit A to Response  at 15-16 ("Employee Manual")(emphasis and bolding in original).  Pioneer Bank states in its Employee Manual: "If your disability continues after 180 days, you may contact Human Resources and apply for a long-term disability benefit."  Id. at 16.

Clayton contends that, on July 5, 2006, a few weeks before her short-term disability leave was set to expire, and a few weeks before she was expected to return to work, Pioneer Bank sent her correspondence confirming that she was on leave status.  See Motion ¶ 6, at 3; E-mail from Laura Smith to Pam McClain, Esther Aviles, and Christopher Palmer (dated July 5, 2006)("July 5, 2006 e-mail").  The e-mail stated:

I spoke with Shirley this morning regarding her leave status.  Her last doctor's appt was in May and she was not released to come back to work then because of high blood pressure.  Her next doctor's appt is August 16 and she is hoping to be released at that time.  She said that she very much wants to return to work as soon as possible. I've made a note to bring up this subject with Jon at our next raise meeting.

-4-

July 5, 2006 e-mail.  Pioneer Bank contends that Clayton is expanding the phrase in the e-mail to stand for the proposition that Pioneer Bank placed her on guaranteed short-term disability leave and contends that Clayton's characterization is an unfair expansion of the statement.  See Response ¶ 6, at 3.

Also, on July 5, 2006, Clayton notified Pioneer Bank that she expected to return to work at the end of the short-term disability-leave period.  See Motion ¶ 7, at 3; Testimony of Shirley Clayton at 16:10-17:15 (undated).  Clayton states that, on July 5, 2006, Clayton spoke with Smith and stated that she was going to insist that Dr. Vega release her to work on August 16, 2006.  See Testimony of Shirley Clayton at 16:10-17:15 (undated).  Pioneer Bank does not deny Clayton's testimony, but suggests that the Court should consider all of her testimony.  See Response ¶ 7, at 3-4.  Clayton was hoping to be released to return to work at her doctor's appointment on August 16, 2006.  See Motion ¶ 7, at 3; Testimony of Shirley Clayton at 16:10-17:15 (undated).  None of the documents, however, confirm that Clayton was released to return to work on or before August 16, 2006.  Pioneer Bank has not received any information from Clayton that she was released to return to work on that date.  See Palmer Aff. ¶¶ 22-23, 29, 37, at 3-5.

Pioneer Bank has admitted that it would not have suffered any undue hardship by waiting a few more weeks to allow Clayton to return to work.  See Response ¶ 8, at 4.  Pioneer Bank, through its senior vice president, Christopher Palmer, has admitted that keeping Clayton on short-term disability leave for the remainder of July until August, when she was expected to return to work, would not have placed an undue hardship on Pioneer Bank.  See Testimony of Christopher Palmer at 134:7-135:6.  Pioneer Bank argues that Clayton has taken Palmer's testimony out of context.  See Response ¶ 8, at 4.  Pioneer Bank had made temporary alterations in work assignments

to accommodate Clayton's extended leave to relieve the undue hardship on the other employees in her department.  See Palmer Aff. ¶¶ 24-28, at 3-4.  Thus, Palmer's testimony reflects that there would have been no additional burden to Pioneer Bank with carrying forward these temporary assignments for an additional month, but Palmer did not testify that there was no undue hardship caused to Pioneer Bank by Clayton's absence.  See Testimony of Christopher Palmer at 134:7-135:6.

Pioneer Bank terminated Clayton shortly before she was expected to return to work after having suffered a heart attack and undergone multiple bypass surgery.  Clayton maintains that, on July 21, 2006, rather than allowing Clayton's employment to continue until the end of the short-term disability-leave period, Pioneer Bank terminated her a few weeks before Clayton's short-term disability leave was set to expire, before her anticipated return-to-work date, and a few weeks after she had told Smith that she expected to return to work, Pioneer Bank terminated Clayton.  See Motion ¶¶ 6, 9, at 3; Palmer Aff. ¶ 32, at 4.  The notice of termination stated that Pioneer Bank was terminating Clayton because she had not been able to return to work.  See Motion, Exhibit 8, Letter from Laura Smith to Shirley Clayton (dated July 21, 2006) at 1 ("July 21, 2006 letter").

Clayton was not able to be present at work at the time of her termination.  See Response ¶ 9, at 4.  Clayton contends that her inability to return to work was the result of her medical disability.  See Motion ¶ 9, at 3.  Pioneer Bank states that the termination letter speaks for itself with regard to the reasoning behind the termination.  See id.  The termination letter stated, in relevant part:

> Upon reviewing your current leave status, we have decided to officially terminate your employment with Pioneer Bank, effective immediately.
>
> Although your FMLA leave expired on 2/17/06, we elected at that time to continue your employment and place you on short-term disability leave.  Though no longer employed at Pioneer, you may remain under our short-term disability coverage until

it expires on 8/31/06. At this time, you may apply for long-term disability coverage under Jefferson Pilot Financial, which would be subject to their approval. You will need to file a claim with Jefferson Pilot as soon as possible to be evaluated for eligibility. Please see the additional information I've enclosed on our long-term disability insurance.

Your medical/dental insurance coverage with Pioneer Bank will terminate on 7/31/06; however, you are eligible to continue coverage under COBRA. Our administration for COBRA is handled by Conexis Solutions. You will be receiving a letter from them within the next several days explaining your options. Should you have any questions, you may contact Conexis' Participant Services department at (877) 864-9546.

We appreciate your service to Pioneer Bank and send you our very best wishes.

July 21, 2006 letter at 1.

On September 1, 2006, Pioneer Bank's insurance carrier advised Pioneer Bank that Clayton was no longer disabled according to the definition of disability in Pioneer Bank's long-term disability policy. See Motion, Exhibit 9, Letter from Jefferson Pilot Financial to Laura Smith at 1 (dated September 1, 2006)("September 1, 2006 letter"). Pioneer Bank argues that the document is hearsay and does not provide substantive proof of Clayton's disability or lack thereof. See Response ¶ 10, at 4.

Clayton filed a charge with the New Mexico Human Rights Division. See Complaint ¶ 15, at 3. At the hearing before the New Mexico Human Rights Commission, Pioneer Bank introduced the September 1, 2006 letter from its insurer. See Reply in Support of Plaintiff's Motion for Summary Judgment (Docket No. 29) at 2, filed April 14, 2008 (Doc. 37)("Reply"). Palmer admitted that the letter notified Pioneer Bank that Clayton was ready to return to work as of the date her short-term disability leave expired, because her medical condition causing her disability had resolved. See Reply, Exhibit 1, Testimony of Christopher Palmer at 106:25-107:3, 129:20-130:7 (undated).

## PROCEDURAL BACKGROUND

The title to Clayton's Complaint reviews her claims: Violation of 42 U.S.C. §§ 12101 et seq.; Violations of the New Mexico Human Rights Act; and Punitive Damages. See Complaint ¶¶ 16-29, at 3-5. Clayton appeals the New Mexico Human Rights Division's adverse finding against her. See id. ¶ 15, at 3. Clayton's Complaint is not verified. See Complaint at 1.

Before filing her motion, Clayton contacted opposing counsel, and Pioneer Bank stated that it opposed her motion. See Motion at 1. Clayton moves for partial summary judgment against Pioneer Bank. See id. Clayton's motion seeks partial summary judgment on the issue of liability for her claims under the ADA and the NMHRA. See id.

Paragraphs 1, 2, 3, 4, and 5 of the motion for summary judgment rely upon allegations in Clayton's Complaint. See Motion ¶¶ 1-5, at 2-3. The only exhibits attached to Clayton's motion which purport to be sworn statements are Exhibits 5 and 7, which are portions of the proceedings that the New Mexico Human Rights Division held with regard to Clayton's charges of discrimination. See Motion, Exhibits 5 and 7. The remaining exhibits are correspondence, letters, and reports. See Motion, Exhibits 1-4, 6-9.

Pioneer Bank filed its Response to Plaintiff's Motion for Partial Summary Judgment on March 3, 2008. See Doc. 31. Pioneer Bank's response in opposition includes the affidavit of its Senior Vice President, Christopher Palmer. See Palmer Aff. ¶ 2, at 1. Although Pioneer Bank did not make Palmer's affidavit as an exhibit, the Court is free to consider the affidavit in making its ruling.

On April 14, 2008, Clayton filed her Reply to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment. See Doc. 37. That same day, Clayton filed a Notice of Completion,

giving notice to the Court that briefing on her motion was complete.  See Notice of Completion, filed April 14, 2008 (Doc. 38).  She noted that the motion was now fully briefed and ready for the Court's decision.  See id. at 1.

At the June 30, 2008 hearing, Clayton stated that, under the ADA, just as under Title VII, there is a burden-shifting analysis at the summary judgment stage.  See Transcript of Hearing (taken June 30, 2008)("Tr.") at 9:4-5 (Lyle).[1]  Clayton maintained that, once she establishes her prima-facie case, the burden shifts to Pioneer Bank to show that the accommodation requested would have caused an undue hardship.  See id. at 9:15-18 (Lyle). Clayton conceded that this case is not about an impairment, but rather, is about incapacitation.  See id. at 17:3-25 (Lyle & Court).  Clayton contended that reasonable accommodations include schedule changes and rescheduling.  See id. at 24:15-20 (Lyle).  Clayton noted that she was requesting a scheduling accommodation.  See id. at 27:22-24 (Lyle).  Clayton argued that, under the NMHRA, if an employer terminates someone because of a medical condition, the employer is liable.  See id. at 30:21-24 (Lyle).  Clayton conceded, however, that the New Mexico courts use the same analysis for the NMHRA as the federal courts use for the ADA.  See id. at 30:25-31:1 (Lyle).

Pioneer Bank argued that the McDonnell Douglas analysis governs Clayton's ADA claim. See Tr. at 32:14-15 (Patterson). Pioneer Bank conceded that its insurance company's determination, that Clayton was disabled for the short-term disability benefit using its criteria for long-term disability benefits, could be evidence that Clayton is disabled.  See id. at 34:1-13 (Court & Patterson).  Pioneer Bank contended, however, that Clayton's doctor, Dr. Vega, did not indicate that

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Clayton was incapacitated for other positions aside from the position that she held when she was terminated.  See id. at 35:12-20 (Court & Patterson).  Pioneer Bank argued that the ADA was not meant to address temporary nonpermanent conditions that are not long term.  See id. at 38:18-22 (Patterson).  Pioneer Bank maintained that Clayton had not presented evidence that she was incapacitated for all of the positions in which she could have been employed for Pioneer Bank. See id. at 40:21-41:2 (Patterson).  Pioneer Bank contended that Dr. Vega's report that Clayton was incapacitated under the FMLA for the position at which she was employed before Pioneer Bank terminated her is not sufficient evidence that she was unable to perform a class of jobs or a broad range of jobs in various classes. See id. at 40:12-41:2 (Patterson & Court).  Pioneer Bank asserted that, "[j]ust because it uses the word[s] short-term and long-term disability does not [mean that the] employee . . .  meets the ADA's standards for definition of disability."  Id. at 45:5-8 (Patterson).

Pioneer Bank argued that extending a long-term absence and reassigning job duties to another employee are not reasonable accommodations.  See id. at 49:17-20 (Patterson).  Pioneer Bank argued that it had a legitimate, nondiscriminatory reason for terminating Clayton: her absence from work.  See id. at 56:16-17 (Patterson).  Pioneer Bank contended that it terminates employees who do not attend work regardless of the cause for their nonattendance.  See id. at 57:12-15 (Patterson).  Pioneer Bank argued that Clayton was not treated any differently than an employee who does not attend work for a given period of time, and was, in fact, treated better than some employees because it paid her insurance premiums and "did other things for her during the eight month period prior to her termination."  Id. at 57:15-22 (Patterson).   Pioneer Bank also maintained that the NMHRA, as written by the New Mexico legislature, contemplates exclusive jurisdiction in the state district court of appeals from the New Mexico Human Rights Division.  See id. at 59:12-25

(Patterson).

## LAW REGARDING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is an integral part of the Federal Rules of Civil Procedure which are intended to "secure the 'just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)(quoting Fed. R. Civ. P. 1). Summary judgment is appropriate if the "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has "the 'initial burden to show that there is an absence of evidence to support the nonmoving party's case.'" Mirzai v. State of N.M. Gen. Servs. Dep't, 506 F.Supp.2d 767, 774 (D.N.M. 2007)(Browning, J.)(quoting Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000)). In addition to showing that there are no questions of material fact, the moving party must also show that it is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. at 323.

Rule 56 does not necessarily require the movant to support the motion for summary judgment only by sworn affidavits or to provide other materials under oath. See Fed. R. Civ. P. 56(c)("The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.")(emphasis added); Baker v. Via Christi Reg'l Med. Ctr., 267 Fed.Appx. 755, 758 (10th Cir. 2008)(explaining that "the pleadings and admissible evidence demonstrate there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.")(internal quotation marks omitted). "Rule 56(e) "is an enlarging provision as to what may be considered, not a restriction." C. Wright and A. Miller, Federal Practice

and Procedure § 2721 (2008).  "[A] movant is not always required to come forward with affidavits or other evidence to obtain summary judgment; once the movant points out an absence of proof on an essential element of the non-movant's case, the burden shifts to the non-movant to provide evidence to the contrary."  Allen v. Cunningham, 51 F.3d 285 (Table), No. 94-6280, 1995 WL 143130 at *2 (10th Cir. March 27, 1995).  The United States Court of Appeals for the Tenth Circuit explained in Mitchell v. City of Moore, Oklahoma, 218 F.3d 1190 (10th Cir. 2000):

> The movant bears the initial burden of making a prima[-]facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  In so doing, a movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim.  Such a movant may make its prima[-]facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.

218 F.3d at 1197.  "[A] movant is not always required to come forward with affidavits or other evidence to obtain summary judgment; once the movant points out an absence of proof on an essential element of the non-movant's case, the burden shifts to the non-movant to provide evidence to the contrary."  Allen v. Cunningham, 51 F.3d 285 (Table), No. 94-6280, 1995 WL 143130 at *2 (10th Cir. March 27, 1995).  The United States Court of Appeals for the Tenth Circuit explained in Mitchell v. City of Moore, Oklahoma, 218 F.3d 1190 (10th Cir. 2000):

> The movant bears the initial burden of making a prima[-]facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  In so doing, a movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim.  Such a movant may make its prima[-]facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.

218 F.3d at 1197.

Although the court must consider the material that the parties submit in support of and in opposition to the motion liberally in favor of the party opposing the motion, see Harsh v. United

-12-

States, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating the absence of evidence to support the nonmoving party's case, see Celotex Corp. v. Catrett, 477 U.S. at 324.  Once the moving party meets that initial burden, the nonmoving party bears the burden of setting "forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(internal quotation marks omitted).  A court may properly grant summary judgment on behalf of the plaintiff on all or part of the plaintiff's claims if there is no genuine issue of material fact, and if the court finds that the plaintiff is entitled to judgment as a matter of law.  Cf. Anderson v. Liberty Lobby, Inc., 477 U.S. at 256 ("The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict.").  A verified pleading may be treated as an affidavit if the pleading demonstrates that the facts asserted are within the pleader's personal knowledge.  See Jason v. Circle K Corp., 773 F.2d 1138, 1139 n.1 (10th Cir. 1983).

## LAW REGARDING THE ADA

If the plaintiff does not have direct evidence of discrimination, then the court applies the McDonnell-Douglas burden shifting analysis.  See  Mackenzie v. City and County of Denver, 414 F.3d at 1274. To establish a prima-facie case for an ADA violation, a plaintiff must demonstrate: "(1) that she is a disabled person within the meaning of the ADA . . . (2) that she is qualified, that is, she is able to perform the essential functions of the job, with or without reasonable accommodation . . .  and (3) that the employer terminated her employment under circumstances

-13-

which give rise to an inference that the termination was based on her disability." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997). See Mackenzie v. City and County of Denver, 414 F.3d 1266, 1274 (10th Cir. 2005)(same). If the plaintiff establishes a prima-facie case for any of his discrimination claims, "the burden shifts to the defendant to come forward with a legitimate nondiscriminatory reason for its employment related decision." McDonnell Douglas Corp. v. Green, 411 U.S. at 802. "Upon the employer's articulation of a legitimate, nondiscriminatory reason, the presumption of discrimination established by the prima-facie case simply drops out of the picture." Kelly v. City of Albuquerque, 375 F.Supp.2d 1183, 1210 (D.N.M. 2004)(Browning, J.)(internal quotation marks omitted). The plaintiff then must present evidence that the defendant's proffered reason for the employment decision was pretextual. See id. (citing Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000).

     1.    **Disability**.

     The ADA defines disability for purposes of the ADA as (i) a physical or mental impairment that substantially limits one or more of the major-life activities of such an individual; (ii) a record of a physical or mental impairment that substantially limits one or more of the major-life activities of such an individual; or (iii) being regarded as having a physical or mental impairment that substantially limits one or more of the major-life activities of such an individual. See MacDonald v. Delta Air Lines, Inc., 94 F.3d 1437, 1443 (10th Cir. 1996). 42 U.S.C. § 12102 defines disability:

> The term "disability" means, with respect to an individual --
>
> (A) a physical or mental impairment that substantially limits one or more of the major[-]life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(A)-(C).  Merely having a medical condition does not make one disabled for purposes of the ADA.  See Toyota Motor Mfg. Ky., Inc. v. Williams, 534 U.S. 184, 195 (2002).  "It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires [those claiming the Act's protection] . . . to offer evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial. "  Id. at 198.

Major-life activities include such functions as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, sleeping, sitting, standing, lifting, reaching, and working.  See Poindexter v. Atchison, Topeka and Santa Fe Ry. Co., 168 F.3d 1228, 1231 (10th Cir. 1999).  Physical exertion is not a major-life activity, but "working" has been recognized as a major-life activity.  MacKenzie v. City and County of Denver, 414 F.3d at 1275.  If the plaintiff's disability relates to the major-life activity of work, the plaintiff must demonstrate that he or she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major[-]life activity of working."  29 C.F.R. § 1630.2(j)(3)(i).

An impairment affecting the ability to work substantially limits a major-life activity if the individual is precluded from a broad range of jobs.  See Sorensen v. Univ. of Utah Hosp., 194 F.3d 1084, 1088 (10th Cir. 1999).  The appropriate inquiry is whether the plaintiff could not perform tasks central to most people's daily lives, not whether she could perform the tasks associated with a specific job.  See Toyota Motor Mfg. Ky., Inc. v. Williams, 534 U.S. at 200.  "If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from

-15-

a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs." Corley v. Dep't of Veterans Affairs ex rel. Principi, 218 Fed.Appx. 727, 738 (10th Cir. 2007).   A claimant is not required to "present evidence of a precise number of jobs from which he [or she] was disqualified because of his [or her] impairment. But in his circumstances he did need to present evidence of general employment demographics and/or of recognized occupational classifications that indicate the approximate number of jobs (e.g., few, many, most) from which [he or she] would be excluded." Id. at 739 (internal quotation marks omitted).

For a disability to qualify for purposes of the ADA, "[t]he impairment's impact must . . . be permanent or long term." Toyota Motor Mfg. Ky., Inc. v. Williams, 534 U.S. at 198.  See Velarde v. Associated Reg'l and Univ. Pathologists, 61 Fed.Appx. 627, 631 & n.3 (10th Cir. 2003)(holding that impairments lasting less than two months did not substantially limit the claimant's overall functioning); McKenzie v. Dovala, 242 F.3d 967, 973 (10th Cir. 2001)(stating that approximately four months of missed work would not "tend to support a finding of disability, inasmuch as [the plaintiff] has been released to return to work, [but] the evidence as a whole could lead a reasonable jury to conclude that she had a record of a disability for purposes of the ADA.")(emphasis added). The Tenth Circuit noted in  Aldrich v. Boeing Co., 146 F.3d 1265 (10th Cir. 1998), that:

> Although temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities . . . . an impairment does not necessarily have to be permanent to rise to the level of a disability. Some conditions may be long-term, or potentially long-term, in that their duration is indefinite and unknowable or is expected to be at least several months. Such conditions, if severe, may constitute disabilities.

146 F.3d at 1270(internal quotation marks omitted).

The Supreme Court has also stated that a person is regarded as disabled within the meaning

-16-

of the ADA if "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major[-]life activities, or (2) a covered entity mistakenly believes that the person's actual, non-limiting impairment substantially limits one or more major[-]life activities." Sutton v. United Airlines, Inc., 527 U.S. 471, 489 (1999). "In both cases, it is necessary that a covered entity entertain misperceptions about the individual -- it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting. These misperceptions often result from stereotypic assumptions not truly indicative of . . . individual ability." Id. (internal quotation marks and bracket omitted).   See Memorandum Opinion and Order at 24 in Salazar v. Ashcroft, No. CIV 02-0878 JB/RLP, filed May 26, 2004 (Doc. 65)(D.N.M. May 26, 2004)(Browning, J.)(stating that, "[t]o now establish that [the claimant's] employer regarded her as disabled, she must establish that she was not disabled and the employer's regarding her as disabled was erroneous.")(emphasis in original)(citing Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 521-22 (1999)).

"[W]hether a claimed affliction constitutes an impairment under the ADA and whether the identified endeavor constitutes a major[-]life activity are determinations of law for the court to decide."   Poindexter v. Atchinson, Topeka and Santa Fe Ry. Co., 168 F.3d at 1230.   In Hall v. Claussen, 6 Fed.Appx. 655 (10th Cir. 2001), the Tenth Circuit explained that, in Poindexter v. Atchinson, Topeka and Santa Fe Railroad Co., "the jury had no guidance as to what constituted major[-]life activities, and we were unable to discern on appeal what possible major[-]life activities had led the jury to find for the plaintiff."   6 Fed.Appx. at 667.   Thus, where the court provides "specific examples of major[-]life activities," where the claimant "does not argue that any of the specific examples are improper or misleading descriptions of major[-]life activities under the ADA,"

-17-

and where the claimant offers evidence that the claimed disability "substantially limited one of the major[-]life activities listed in the instructions -- working," the jury may decide the issue. Id. at 666-67. See Praseuth v. Rubbermaid, Inc., 406 F.3d 1245, 1251 (10th Cir. 2005)(explaining that, based on the evidence the claimant presented that "her 'potential occupational base' was substantially reduced by her impairments," the jury could have found the claimant was "substantially limited in the major[-]life activity of working.").

In Mackenzie v. City and County of Denver, the plaintiff suffered an angia attack -- chest pain or discomfort occurring when the heart muscle does not receive enough blood -- and a heart attack. See 414 F.3d at 1272. Despite those attacks, the plaintiff admitted she was able to perform her job without restrictions and was capable of performing an entire class of jobs which was evidenced by her various applications to speciality clerk positions without requesting an accommodation. See id. The plaintiff was able to walk, care for herself, engage in a three-days-a-week exercise regime, and handle manual tasks. See id. She claimed in her EEOC charge that she suffered disability discrimination based on her heart condition. See id. The district court granted her employer's motion for summary judgment. See id. at 1273.

The employer in Mackenzie v. City and County of Denver did not dispute that the plaintiff had a heart condition. See id. at 1275. The Tenth Circuit noted that a jury could reasonably conclude, even without expert medical testimony, that the plaintiff "had a condition affecting the cardiovascular system constituting a physical impairment under the ADA." Id. (citing 29 C.F.R. § 1630.2(h)(1)(stating "[p]hysical or mental impairment means . . . any physiological disorder, or condition . . . affecting one or more of the following body systems: . . . cardiovascular."). Nevertheless, the Tenth Circuit noted that, while the plaintiff contended that her heart condition

limited her major-life activities of physical exertion (unable to lift over 50 pounds) and stress-related

work, "[m]ere physical exertion (except to the extent that it affects one's ability to work) does not

constitute a major[-]life activity under the ADA." Mackenzie v. City and County of Denver, 414

F.3d at 1275.

The Tenth Circuit in Mackenzie v. City and County of Denver recognized that working is

a major-life activity. See id. To show one is disabled, however, a plaintiff must show he or she is

"'significantly restricted'" in performing the major-life activity, "'as compared to the condition,

manner, or duration under which the average person in the general population can perform that same

major[-]life activity.'" Id. at 1275-76 (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). Where a plaintiff is

maintaining that working constitutes a major-life activity, the plaintiff "must demonstrate she is

unable to perform either a class of jobs or a broad range of jobs in various classes." Id. at 1276. The

plaintiff's disability claim failed in Mackenzie v. City and County of Denver. The Tenth Circuit

stated that because she did not demonstrate her ability to work was substantially impaired merely

when she could not work under a particular supervisor because of the stress and anxiety he caused.

 See id. Thus, the Tenth Circuit concluded that, as a matter of law, the plaintiff had not

demonstrated an impairment to a major-life activity, and failed to establish the first prong of her

prima-facie case that she was disabled under the ADA. See id.

### 2.    Qualified Individuals Who Could Perform the Essential Functions of the Position With or Without Accommodation.

The Tenth Circuit uses a two-part analysis for this element:

First, the court determines whether the individual can perform the essential functions
of the job. . . .   Second, if (but only if) the court concludes that the individual is
unable to perform the essential functions of the job, the court determines whether any
reasonable accommodation by the employer would enable her to perform those
functions.

Mason v. Avaya Commc'n, Inc., 357 F.3d 1114, 1118 (10th Cir. 2004)(emphasis in original but internal quotation marks omitted).  See Brockman v. Wyo. Dep't of Family Serv., 342 F.3d 1159, 1168 (10th Cir. 2003)(employing a similar analysis under Rehabilitation Act).  A plaintiff bears the burden of showing that he or she was able to perform the essential functions of her job at the time of the termination.  See Mason v. Avaya Commc'n, Inc., 357 F.3d at 1119 (citing U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 400 (2002)).  The federal courts will defer to an employer's judgment as to what functions of a job are essential.  See Mason v. Avaya Commc'n, Inc., 357 F.3d at 1119 (stating that a court "will not second guess the employer's judgment when its description is job-related, uniformly enforced, and consistent with business necessity.").

Physical attendance in the workplace is an essential function of most jobs.  See Mason v. Avaya Commc'n, Inc., 357 F.3d at 1119-20.  The Tenth Circuit has emphasized: "We have consistently held, however, that an employee's request to be relieved from an essential function of her position is not, as a matter of law, a reasonable or even plausible accommodation." Id. at 1123. Terminating an employee who does not show up for work for an extended period of time and who used up all of his or her leave is not disability discrimination.  See Basith v. Cook County, 241 F.3d 919, 933 (7th Cir. 2001)(terminating an employee because he or she can no longer perform the essential functions of his or her position can be a legitimate, nondiscriminatory reason for termination).

In Brockman v. Wyoming Department of Family Services, the Tenth Circuit held that the district court properly granted summary judgment dismissing the plaintiff's claim under the Rehabilitation Act where there was no evidence that the plaintiff ever notified the employer that she was able to return to work before her termination.  See 342 F.3d at 1168.  "An employer is not

-20-

required to wait indefinitely for an employee to recover." Id. Attendance at the job is an essential function. See id.

In Milton v. Scrivner, Inc., 53 F.3d 1118 (10th Cir. 1995), the Tenth Circuit stated: "An employer is not required by the ADA to reallocate job duties in order to change the essential function of a job." 53 F.3d at 1124. The Tenth Circuit explained:

> An accommodation that would result in other employees having to worker harder or longer hours is not required. See 29 C.F.R. § 1630.2(p)(2)(v)(impact to other employees on their ability to do their duties is a relevant factor in determining the reasonableness of an accommodation). Slowing the production schedule or assigning plaintiffs lighter loads would fundamentally alter the nature of defendant's warehouse operation, a change not demanded by the law. See 29 C.F.R. Pt. 1630 App. § 1630.2(p).

Milton v. Scrivner, Inc., 53 F.3d at 1125.

The Tenth Circuit stated in Cisneros v. Wilson, 226 F.3d 1113 (10th Cir. 2000), overruled on other grounds by Bd. of Trustees Univ. of Ala. v. Garrett, 531 U.S. 356 (2001), that "a request for indefinite leave cannot constitute 'reasonable' accommodation -- such a leave request does not allow the employee to perform the essential functions of the job in the near future." 226 F.3d at 1129 (emphasis in original). The Tenth Circuit explained that it "has required an employee to provide an expected duration of the impairment (not the duration of the leave request)." Id. at 1130. In Cisneros v. Wilson, the plaintiff relied on her affidavit to establish that she was expected to recover by January of 1996, while letters from her doctors stated that the plaintiff "remains unable to return to work [and i]t is uncertain when she may be capable of returning to work" and that the duration of the plaintiff's illnesses were "unknown . . . and she should be excused from any and all work until January of 1996." Id.

The Tenth Circuit in Cisneros v. Wilson stated that the plaintiff's "own belief is not

sufficient to create a triable issue of fact, especially where, as here, her belief is inconsistent with the evidence from her own doctors." Id. at 1130-31. The Tenth Circuit held that the plaintiff's statement in her affidavit that she believed she could have returned to work if other employees had not harassed her "is not the evidence necessary to establish that she was capable of performing the essential functions of her position." Id. at 1131. Thus, because the plaintiff did not "establish if or when she could return to work" and "a leave request is not reasonable if the plaintiff failed to present evidence of the expected duration of her impairment," the plaintiff failed to demonstrate that she was a qualified individual with a disability and that her leave request was a reasonable accommodation. Id.

### 3.   **Determining Factor**.

To satisfy the third element of the prima-facie case, the Tenth Circuit has required the plaintiff to "provide some evidence that [the] disability was a determining factor in [the employer's] decision." Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 878 (2004). An employee states a cause of action for disability discrimination when the employer based its decision on factors related to a disability. See id. This element requires "the plaintiff to present some affirmative evidence that disability was a determining factor in the employer's decision, a burden that is not onerous but also not empty or perfunctory." Ainsworth v. Indep. Sch. Dist. No. 3 of Tulsa County, Okla., 232 Fed.Appx. 765, 770 (10th Cir. 2007)(internal quotation marks omitted). "This showing requires the plaintiff to present some affirmative evidence that disability was a determining factor in the employer's decision. . . . In other words, the plaintiff must present evidence that, if the trier of fact finds it credible, and the employer remains silent, she would be entitled to judgment as a matter of law." Butler v. City of Prairie Village, Kan., 172 F.3d 736, 748 (10th Cir. 1999)(internal quotation

marks and bracket omitted).  See Jones v. United Parcel Serv., Inc., 502 F.3d 1176, 1195 (10th Cir. 2007)(affirming summary judgment because the plaintiff had not presented "evidence showing his supervisors knew of his belief that he was entitled to a reasonable accommodation under the ADA based on a perceived disability.").

    **4.**    **Undue Hardship.**

    Undue hardship "may be a defense to a charge of discrimination . . . that a requested or necessary accommodation would impose an undue hardship on the operation of the covered entity's business."  29 C.F.R. § 1630.15(d).  "Undue hardship" means an action that requires significant difficulty or expense.  42 U.S.C. § 12111(10)(A).  A court should consider the following factors to determine whether an accommodation would impose an undue hardship on a covered entity:

> (i) the nature and cost of the accommodation needed . . .
>
> (ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;
>
> (iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
>
> (iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12111(10)(B).  See Davoll v. Webb, 194 F.3d 1116, 1131 (10th Cir. 1999)(noting that, while reassignment may be a reasonable accommodation under some circumstances, "an employer need not reassign an employee to a position which would be a promotion or would constitute an undue burden on the employer.").  In Smith v. Midland Brake, Inc., a Division of Echlin, Inc., 180

F.3d 1154 (10th Cir. 1999), the Tenth Circuit defined undue hardship as

> an action requiring significant difficulty or expense when considered in light of various factors. The factors to be considered in determining whether an accommodation would cause an employer undue hardship are, among others: the nature and cost of the accommodation; the number of persons employed by the company; the financial resources of the company; and the impact of the accommodation upon the operation of the company.

180 F.3d at 1178.  "Consequently, the entity bears the burden of persuasion regarding . . . undue burden."  Colo. Cross Disability Coal. v. Hermanson Family Ltd. P'ship I, 264 F.3d 999, 1003 (10th Cir. 2001).

"An allowance of time for medical care or treatment may constitute a reasonable accommodation."  Taylor v. Pepsi-Cola Co., 196 F.3d 1106, 1110 (10th Cir. 1999).  In Taylor v. Pepsi-Cola Co., the Tenth Circuit found that "an indefinite period of medical leave [wa]s not a reasonable accommodation" because the

> [p]laintiff failed to present evidence of the expected duration of his impairment. At the time Defendant terminated him, Plaintiff had already been on leave for medical treatment for more than one year.  Plaintiff's doctor did not release him to return to work, subject to substantial restrictions, until June 2, 1997. Plaintiff would have required ten and one-half months combined with and following a one year medical leave. Such an accommodation is not reasonable, particularly when Plaintiff had already advised Defendants he would never be able to return to his former position and could not advise when and under what conditions he could return to any work.

196 F.3d at 1110.  In Hudson v. MCI Telecommunications Corp., 87 F.3d 1167 (10th Cir. 1999), the Tenth Circuit held that the plaintiff "failed to present a genuine issue of material fact for trial."  Id. at 1169.  The Tenth Circuit stated that "a reasonable allowance of time for medical care and treatment may, in appropriate circumstances, constitute a reasonable accommodation" but that the plaintiff failed "to present any evidence of the expected duration of her impairment as of the date of her termination."  Id.  The Tenth Circuit explained:

The physicians' reports upon which plaintiff relies indicate only that permanent impairment was not anticipated at the time the reports were prepared. The forms provide no indication, however, of when plaintiff could expect to resume her regular duties at [her employer]. Moreover, [her doctor's] notes through the date of her termination underscore the uncertainty of her prognosis. Under these circumstances, it makes no difference that [her employer] had the option of removing her from the payroll and paying the cost of her disability benefits. [Her employer] was not required to wait indefinitely for her recovery, whether it maintained her on its payroll or elected to pay the cost of her disability benefits. Accordingly, [the plaintiff] has failed to present evidence from which a reasonable jury could find that the accommodation she urges, unpaid leave of indefinite duration, was reasonable.

Id.

## LAW REGARDING THE McDONNELL DOUGLAS FRAMEWORK

Under the McDonnell Douglas framework, a plaintiff must set forth a prima-facie case of discrimination. See Kelly v. City of Albuquerque, 375 F.Supp.2d 1183, 1210 (D.N.M. 2004)(Browning, J.). If the plaintiff establishes a prima-facie case for any of his or her discrimination claims, "the burden shifts to the defendant to come forward with a legitimate non[-]discriminatory reason for its employment related decision." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). "Upon the employer's articulation of a legitimate, non[-]discriminatory reason . . . the presumption of discrimination established by the prima[-]facie case simply drops out of the picture." Kelly v. City of Albuquerque, 375 F.Supp.2d at 1210 (internal quotation marks omitted). The plaintiff then must present evidence that the defendant's proffered reason for the employment decision was pretextual. See id. (citing Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000)).

The plaintiff has an obligation to provide sufficient evidence to disbelieve the employer's legitimate, non-discriminatory reason for terminating her. See Guyton v. Ottawa Truck Div., Kalmar Indus. U.S.A., Inc., 15 Fed.Appx. 571, 577 (10th Cir. 2001). The relevant inquiry is not

whether the employer's proffered non-discriminatory reasons "were wise, fair, or correct," but whether the employer "honestly believed those reasons and acted in good faith upon those beliefs." Id. (internal quotations omitted). "[A] mistaken belief can be a legitimate reason for an employment decision and is not necessarily pretextual." Kendrick v. Penske Transp. Servs., Inc., 220 F.3d at 1231. "[T]he defendant's burden at this stage is one of production, not one of persuasion." Mirzai v. State of N.M. Gen. Servs. Dep't, 506 F.Supp.2d at 775. "If the defendant is successful in articulating some legitimate, non-discriminatory reason, 'the presumption of discrimination established by the prima[-]facie showing "simply drops out of the picture."'" Id. (quoting Bryant v. Farmers Ins. Exch., 432 F.3d 1114, 1125 (10th Cir. 2005)(quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993))). Once the employer counters with a non-discriminatory explanation, the burden then shifts back to the plaintiff, who is required to offer specific evidence that demonstrates the employer's reasoning is pretextual. See Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988).

"Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Morgon v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)(internal quotation marks omitted). A plaintiff's mere conjecture that her employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment. See Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988).

A plaintiff typically shows pretext in one of three ways:

[(i)] with evidence that the defendant's stated reason for the adverse employment action was false; [(ii)] with evidence that the defendant acted contrary to a written

company policy prescribing the action to be taken by the defendant under the circumstances; or [(iii)] with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff. A plaintiff who wishes to show that the company acted contrary to an unwritten policy or to company practice often does so by providing evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness.

Green v. New Mexico, 420 F.3d 1189, 1193 (10th Cir. 2005). "The plaintiff is not required to present evidence of actual discrimination to establish pretext, because '[e]vidence tending to show pretext permits an inference that the employer acted for discriminatory reasons.'" Mirzai v. State of N.M. Gen. Servs. Dep't, 506 F.Supp.2d at 776.

## LAW REGARDING THE NMHRA

It is an unlawful discriminatory practice for:

an employer, unless based on a bona fide occupational qualification or other statutory prohibition, to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or serious medical condition, or, if the employer has fifty or more employees, spousal affiliation; provided, however, that 29 U.S.C. Section 631(c)(1) and (2) shall apply to discrimination based on age; or, if the employer has fifteen or more employees, to discriminate against an employee based upon the employee's sexual orientation or gender identity.

N.M.S.A. 1978, § 28-1-7.  N.M.S.A. 1978, § 28-1-13 provides that

A person aggrieved by an order of the commission may obtain a trial de novo in the district court of the county where the discriminatory practice occurred or where the respondent does business by filing a notice of appeal within ninety days from the date of service of the commission's order. . . . The jurisdiction of the district court is exclusive and its judgment is final, subject to further appeal to the court of appeals.

N.M.S.A. 1978, § 28-1-13(A) and (C).

While the federal courts' decisions are not binding, the New Mexico courts have looked to federal interpretation of similar statutory provisions for guidance.  See Smith v. FDC Corp., 109

N.M. 514, 518, 787 P.2d 433, 437 (1990).  The Supreme Court of New Mexico explained in Smith

v. FDC Corp.:

> Although the burdens of proof and methodology for proving employment
> discrimination under the New Mexico Human Rights Act have not previously been
> addressed by this court, the United States Supreme Court has considered this
> question in interpreting the Civil Rights Act of 1964, see McDonnell Douglas Corp.
> v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  The evidentiary
> methodology adopted therein provides guidance for proving a violation of the New
> Mexico Human Rights Act. Our reliance on the methodology developed in the
> federal courts, however, should not be interpreted as an indication that we have
> adopted federal law as our own. Our analysis of this claim is based on New Mexico
> statute and our interpretation of our legislature's intent, and, by this opinion, we are
> not binding New Mexico law to interpretations made by the federal courts of the
> federal statute.

109 N.M. at 518, 787 P.2d at 437.  As a general matter, New Mexico state courts refer to federal law

for interpretation of the basic elements of proof and defenses under the NMHRA.  See, e.g., Cates

v. Regents of the N.M. Inst. of Mining and Tech., 1998-NMSC-002, ¶ 15, 954 P.2d 65, 70

(explaining that the New Mexico courts use the Mc Donnell Douglas burden-shifting approach for

the NMHRA); Mirzai v. State of N.M. Gen. Servs. Dep't, 506 F.Supp.2d at 781 (stating that "[b]oth

the Tenth Circuit and the Supreme Court of New Mexico have acknowledged that the McDonnell

Douglas framework is appropriate for discrimination claims brought under the HRA involving

indirect evidence of discrimination.")(citing Orr v. City of Albuquerque, 417 F.3d 1144, 1148-49

(10th Cir. 2005) and Cates v. Regents of the N.M. Inst. of Mining & Tech., 1998-NMSC-002, ¶ 15,

954 P.2d 65, 69-70).

The NMHRA has provisions which are different from the ADA's specific language.  For

example, the NMHRA makes it illegal for an employer to "discharge . . . any person otherwise

qualified because of . . . serious medical condition. . . ." N.M.S.A. 1978, § 28-1-7(A).  The ADA

does not use the term "serious medical condition," and the term is more akin to FMLA's language,

which requires leave be given under circumstances to accommodate a "serious health condition."

29 U.S.C. § 2611(A) and (B)("The term "serious health condition" means an illness, injury,

impairment, or physical or mental condition that involves -- (A) inpatient care in a hospital, hospice,

or residential medical care facility; or (B) continuing treatment by a health care provider.").

To sustain a claim under the NMHRA, a plaintiff generally must prove: (i) that she was a

member of a protected class; (ii) that she was qualified to continue employment; (iii) that her

employment was terminated; and (iv) that her position was filled by someone not in the protected

class. See Kitchell v. Pub. Serv. Co. of N.M., 1998-NMSC-051, ¶ 5 , 972 P.2d 344, 346 (1998).

Regardless of the analysis that is used, "the statute here requires that the plaintiff show that he or

she was 'otherwise qualified' for the employment." Id., 972 P.2d at 346.  "The term 'otherwise

qualified' refers to a person who, though affected by a handicap or medical condition, maintains the

underlying ability to do the job." Id., ¶ 6, 972 P.2d at 346.  An individual who cannot do his or her

job because of a medical condition is no longer "otherwise qualified" for employment. Id. ¶¶ 5-6,

972 P.2d at 346.  The case holds that an employee who cannot engage "for remuneration or profit,

in any occupation for which he is or becomes fitted by age, training, or experience,"is not "otherwise

qualified." Id., ¶ 7, 972 P.2d at 346.

### LAW REGARDING STATE STATUES
### GRANTING JURISDICTION TO STATE COURTS

In Nottingham Construction Co. v. City of Waveland, Mississippi, No. 1:07CV1151-LG-

RHW, 2008 WL 611652 (S.D. Miss. March 5, 2008), the United States District Court for the

Southern District of Mississippi rejected the defendant's argument that it lacked jurisdiction over

the case because the state circuit court had been granted exclusive jurisdiction over appeals of

decisions by municipalities by Mississippi Code Annotated § 11-51-75.  See 2008 WL 611652 at

*2.  The court explained that "federal jurisdiction cannot be defeated by a state statute prescribing the court in which the action is to be brought."  Id. (internal quotation marks omitted).  The court stated:  "[I]t is undisputed that diversity jurisdiction exists . . . . Therefore, this Court has subject matter jurisdiction over this case, and that jurisdiction cannot be limited by state statute."  Id.  See Ry. Co. v. Whitton's Adm'r, 80 U.S. 270 (1871)("Whenever a general rule as to property or personal rights or injuries to either, is established by State legislation, its enforcement by a Federal court in a case between proper parties is a matter of course, and the jurisdiction of the court, in such a case, is not subject to State limitation."); Akin v. La. Nat'l Bank of Baton Rouge, 322 F.2d 749, 754 (5th Cir. 1963)(rejecting the argument that a federal court did not have jurisdiction in a probate case, because "[f]ederal jurisdiction cannot be defeated by a state statute prescribing the court in which the action is to be brought.").

In Atlas Railroad Construction Co. v. Columbus & Greenville Railway Co., 190 F.Supp.2d 908 (N.D.Miss. 2002), the United States District Court for the Northern District of Mississippi also rejected a defendant's argument that Mississippi Code Annotated § 85-7-141 granted exclusive jurisdiction over enforcement of construction liens to the circuit court of the county in which the property is located.  See 190 F.Supp.2d at 910.  The court stated: "It is axiomatic that federal diversity jurisdiction cannot be affected, restricted, or defeated by state legislation giving state courts exclusive jurisdiction over the matter involved."  Id.  The court explained there is no "doubt as to the viability of the long-standing rule that States have no power to enlarge or restrict federal jurisdiction."  Id. at 911.  Thus, the court denied the plaintiff's motion to remand to state court.  See id.

## ANALYSIS

Clayton requests that the Court enter judgment in her favor, as a matter of law, on the issue of Pioneer Bank's liability for alleged violations of the ADA and of the NMHRA. Clayton is not entitled to summary judgment under the ADA, because there are genuine issues of material fact whether her request for four weeks of leave or benefit was a reasonable accommodation. Moreover, Pioneer Bank has articulated a nondiscriminatory, legitimate reason for terminating Clayton's employment which Clayton has not rebutted as pretext. Thus, Clayton is not entitled to judgment as a matter of law on her ADA or NMHRA claims. Clayton is entitled to summary judgment on Pioneer Bank's defense of undue burden or hardship.

## I.     THE MATERIAL FACTS ARE LARGELY UNDISPUTED.

Pioneer Bank contends that Clayton's motion for summary judgment fails to set forth admissible evidence demonstrating that there is no genuine issue of material fact as to each and every element for which Clayton bears the burden. Pioneer Bank contends that the majority of facts set forth in Clayton's motion for summary judgment do not satisfy the standards set forth in the Federal Rules of Civil Procedure, because they do not rely on evidence that meets the admissibility standards required for such evidence. Specifically, Pioneer Bank contends that Clayton has not laid an appropriate foundation for most of the exhibits that she attaches to her motion. Pioneer Bank contends that the Court should not consider those allegations for purposes of Clayton's motion for summary judgment.

While Clayton relies on the allegations in her Complaint for certain introductory facts, none of those facts are in dispute. While those facts help to tell the story, they are not material to the dispute that the Court has to decide. On the facts that are important to the dispute, Clayton is careful

to introduce sworn testimony or otherwise competent evidence. There is nothing in rule 56 or the caselaw construing the rule that requires the movant to go to the expense of securing sworn testimony for every fact asserted, even if the fact is undisputed or mere introductory fact. <u>See</u> Fed. R. Civ. P. 56(c)("The judgment sought should be rendered if <u>the pleadings, the discovery and disclosure materials on file, and any affidavits</u> show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.")(emphasis added); <u>Baker v. Via Christi Reg'l Med. Ctr.</u>, 267 Fed.Appx. at 758 (explaining that "the pleadings and admissible evidence demonstrate "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.")(internal quotation marks omitted). "Rule 56(e) is an enlarging provision as to what may be considered, not a restriction." C. Wright and A. Miller, <u>Federal Practice and Procedure</u> § 2721 (2008).

Pioneer Bank does not make any substantive challenges to Clayton's statement of undisputed facts save one. Pioneer Bank contends that the September 1, 2006 letter from Pioneer Bank's insurer is hearsay and that the Court cannot use the letter to infer that Clayton was ready, as she requested, to return to work at the expiration of her short-term disability leave. Pioneer Bank cannot, on good grounds, however, ask the Court to ignore the letter, because the document has non-hearsay purposes. Nevertheless, Pioneer Bank's challenge to the admissibility of this letter for the truth of the matters asserted therein is well-taken. The Court will, at this stage of the proceedings, admit it only for the purpose of notice. The parties are free to dispute what that notice meant or what notice the letter gave.

Pioneer Bank also continues to dispute whether the six-month short-term disability period was leave and repeatedly asserts that it never offered short-term disability leave. The Court does

not, however, believe the characterization of Pioneer Bank's benefit as leave is unreasonable. Indeed, in her July 21, 2006 letter, Pioneer Bank's Human Resources Director, Lara Smith, noted that, "after reviewing your current leave status, we have decided to officially terminate your employment with Pioneer Bank."   July 5, 2006 e-mail.   Smith also stated: "Although your FMLA leave expired on 2/17/06, we elected at that time to continue your employment and place you on short-term disability leave.  Though no longer employed at Pioneer, you remain under our short-term disability coverage until it expires on 8/31/06."  Id.  The parties disagree, however, on the meaning of the term "leave" and whether the short-term "leave" that Smith refers to in her letter is a benefit or formal leave.  In any case, whether the period was leave or merely a benefit appears to be a dispute that does not preclude a decision on the merits of the motion.

Finally, in addition to pointing out the problems that Clayton's reliance upon unsworn factual allegations creates, Pioneer Bank argues that Clayton's "Statement of Undisputed Material Facts as to Which No Genuine Issue Exists" is not an accurate statement of the evidence in this matter and does not fairly characterize the statements which were made.  While it is important to read all statements in context, and realize that some statements may limit other statements, the statements are not in dispute.  The Court need not decline to grant summary judgment because the parties now have a different view of what certain statements meant.

## II.   THERE ARE GENUINE ISSUES OF MATERIAL FACT ON CLAYTON'S CLAIM UNDER THE ADA.

Clayton did not point to any particular evidence and contend that the evidence is direct evidence of disability discrimination, thus the McDonnell-Douglas test applies.  To establish a prima-facie case for an ADA violation, Clayton must demonstrate: "(1) that she is a disabled person within the meaning of the ADA . . .; (2) that she is qualified, that is, she is able to perform the

essential functions of the job, with or without reasonable accommodation . . .; and (3) that the employer terminated her employment under circumstances which give rise to an inference that the termination was based on her disability."  Morgan v. Hilti, Inc., 108 F.3d at 1323. Clayton's motion for partial summary judgment does not set forth evidence establishing a prima-facie case under the ADA.

### A.    CLAYTON IS DISABLED WITHIN THE MEANING OF THE ADA.

Pioneer Bank argues that the Court should deny Clayton's motion because Clayton has not shown that she was incapacitated from any work during her heart bypass recovery period. Pioneer Bank argues that Clayton fails to identify a specific impairment of a major-life activity.  While Clayton's showing could be stronger, the Court believes it establishes the prima-facie element and that the evidence is undisputed.

Clayton asks the Court largely to infer that she was disabled because she suffered a heart attack and was directed not to work between November 25, 2005 until some time in August 2006. Clayton has made no specific showing, however, whether she was unable to perform a class of jobs or a broad range of jobs.  Indeed, Clayton has not provided any specific evidence of her ability to work at any other position.

On the other hand, Dr. Vega's February 22, 2006, physician certification says, in paragraph 5(c), that Clayton "will be incapacitated" for approximately six months.  Morever, it is reasonable to infer that Clayton was not capable of working during the time that she was incapacitated.

Clayton was not disabled for the purposes of the ADA merely by having a medical condition. See Toyota Motor Mfg. Ky., Inc. v. Williams, 534 U.S. at 195.  Dr. Vega's certification states, however, that Clayton is "unable to work because of shortness of breath" and that "it is necessary

[for Clayton] to be absent from work for full . . . recovery."

Clayton's heart condition is distinguishable from the condition of the plaintiff in Mackenzie v. City and County of Denver.  Unlike the plaintiff in Mackenzie v. City and County of Denver, Clayton has not admitted that she was able to perform her job without restrictions.  There is also no evidence that she was capable, as was MacKenzie, of performing an entire class of jobs, which was evidenced by her various applications to speciality clerk positions without requesting an accommodation.  See 414 F.3d at 1272.  On the contrary, Dr. Vega's comments suggest that she was incapacitated from her heart condition and completely unable to work.  Compare with Mackenzie v. City and County of Denver, 414 F.3d at 1272 (noting that the plaintiff was able to walk, care for herself, engage in a three-days-a-week exercise regime, and handle manual tasks).

Additionally, there is other evidence that, while recovering from her heart attack, Clayton was completely disabled from working.  She was entitled to short-term disability leave because she met Pioneer Bank's definition of long-term disability.  Thus, at the very least, Pioneer Bank regarded Clayton as having a complete impairment that prevented her from working.  See Testimony of Christopher Palmer at 129:1-8 (stating that Pioneer Bank used the same criteria to decide whether to grant short-term disability and long-term disability, and determined that Clayton was eligible for long-term disability).  Pioneer Bank's determination that Clayton fit its criteria for disability, however, does not necessarily fulfill the requirements for demonstrating Clayton was disabled under 42 U.S.C. § 12102.

 Pioneer Bank does not dispute that Clayton suffered a heart attack, was placed on medical restrictions by her doctor preventing her from returning to work, and that her doctor indicated that she was suffering from a serious health condition.  See Response ¶ 2, at 2. Pioneer Bank argues,

however, that Clayton's restrictions were not permanent, because they lasted only nine months and that Clayton has made no showing that the Court should consider this temporary period of recuperation to be a disability under the ADA.

42 U.S.C. § 12102 defines disability:

The term "disability" means, with respect to an individual --

(A) a physical or mental impairment that substantially limits one or more of the major[-]life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(A)-(C).  Major-life activities include such functions as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, sleeping, sitting, standing, lifting, reaching, and working.  See Poindexter v. Atchison, Topeka and Santa Fe Ry. Co., 168 F.3d at 1231-32.  Moreover, to be disabled for purposes of the ADA, "[t]he impairment's impact must . . . be permanent or long term."  Toyota Motor Mfg. Ky., Inc. v. Williams, 534 U.S. at 198. The Tenth Circuit has stated that claimants may be disabled although suffering "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact" when those conditions "may be long-term, or potentially long-term, in that their duration is indefinite and unknowable or is expected to be at least several months."  Aldrich v. Boeing Co., 146 F.3d at 1270. "Such conditions, if severe, may constitute disabilities."  Id.

While Clayton contends that Dr. Vega told her that she would be able to return to work in August of 2006, Pioneer Bank maintains that Clayton never had a confirmed date for her return to work.  Clayton's absence from her employment lasted approximately nine months.  While Clayton alone has not made a showing that her temporary recuperation should be considered a disability

under the ADA, Pioneer Bank maintains that it terminated Clayton because it could not be expected to "hold her position open for an indefinite period of time."  Response at 9.  The length of her absence from her employment at Pioneer Bank is longer than the periods of time which the Tenth Circuit has held do not support a finding of disability.  See Velarde v. Associated Reg'l and Univ. Pathologists, 61 Fed.Appx. at 631 & n.3 (holding that impairments lasting less than two months did not substantially limit the claimant's overall functioning); McKenzie v. Dovala, 242 F.3d at 973 (holding that approximately four months of missed work would not "tend to support a finding of disability, inasmuch as [the plaintiff] has been released to return to work, [but] the evidence as a whole could lead a reasonable jury to conclude that she had a record of a disability for purposes of the ADA.")(emphasis added).  The Court believes that the uncertainty regarding the duration of Clayton's condition and the severity of the condition she suffered support a finding that Clayton was disabled within the meaning of the ADA.  See Mackenzie v. City and County of Denver, 414 F.3d at 1275 (noting that a jury could reasonably conclude, even without expert medical testimony, that the plaintiff "had a condition affecting the cardiovascular system constituting a physical impairment under the ADA." (citing 29 C.F.R. § 1630.2(h)(1)(stating "[p]hysical or mental impairment means . . . any physiological disorder, or condition . . . affecting one or more of the following body systems:  . . . cardiovascular.")).

**B.    THERE IS A GENUINE ISSUE OF MATERIAL FACT WHETHER CLAYTON WAS A QUALIFIED INDIVIDUAL WHO COULD PERFORM THE ESSENTIAL FUNCTIONS OF HER POSITION WITH AN ACCOMMODATION.**

The Tenth Circuit suggests the use of a two-part analysis for this element:

First, the court determines whether the individual can perform the essential functions of the job. . . .  Second, if (but only if) the court concludes that the individual is unable to perform the essential functions of the job, the court determines whether any

reasonable accommodation by the employer would enable her to perform those functions.

Mason v. Avaya Commc'n, Inc., 357 F.3d at 1118.  Clayton's motion does not set forth any information from which the Court can conclude that she was able to perform any of the essential functions of her job at the time of her termination.  Indeed, Clayton's argument appears to be that Pioneer Bank should have granted her an additional four-week period of time off to allow her time to determine whether she would be able to return to work.  Clayton's inability to perform the essential functions of her position while she remained disabled from work means that she is not qualified under the ADA if, and only if, there was no reasonable accommodation available.

### 1.    Clayton Was Unable to Fulfill the Essential Functions of Her Job.

"The question of whether an employee can perform the essential functions of her job is a mixed question of law and fact."  Mason v. Avaya Comm'ns, Inc., 357 F.3d  at 1122. Under some circumstances, however, summary judgment may be granted to the movant on this issue. In Mason v. Avaya Communications, Inc., the Tenth Circuit stated that:  "Assuming a jury may determine the essential functions of a job, we conclude Mason's case is not one in which the essential function inquiry must go to the jury because no reasonable jury could find for Mason applying the factors set forth by 29 C.F.R. § 1630."  357 F.3d at 1122.

The employer in Mason v. Avaya Communications, Inc. stated that physical attendance at the workplace was an essential function of the plaintiff's employment.  See id.  Like the plaintiff in Mason v. Avaya Communications, Inc., the only evidence that Clayton submits regarding the essential functions of her position is her own self-serving testimony.  See 357 F.3d at 1122.  Pioneer Bank states that Clayton's physical attendance at her workplace in Pioneer Bank was an essential function of her employment.  See Response at 8.  Pioneer Bank mentions that, because Clayton's

-38-

employment involved dealing with confidential information for Pioneer Bank's customers, she was prevented from working from home.  See id.  It is thus undisputed that at the time of her termination Clayton was physically unable to attend work.  See Motion ¶ 4, 6-7, at 2-3; Response ¶ 7, at 3.

Thus, because Clayton was unable to perform the essential functions of her employment, the Court must determine whether "any reasonable accommodation by the employer would enable her to perform those functions."  Mason v. Avaya Commc'n, Inc., 357 F.3d at 1118.

**2.      There is a Genuine Issue of Material Fact Whether A Request for Four-Weeks of Additional Leave or Benefit Was A Reasonable Accommodation.**

To sustain her motion for partial summary judgment on the issues of liability, Clayton must show that Pioneer Bank's reservation of her position for her for an additional four weeks, even though she was not performing any of the essential functions of her job, was a reasonable accommodation on its face.  Cf. Mason v. Avaya Comm'ns, Inc., 357 F.3d at 1122 ("To defeat an employer's motion for summary judgment, the employee must first demonstrate that an accommodation appears reasonable on its face."). With regard to the question whether Pioneer Bank could have provided a reasonable accommodation by allowing Clayton to complete her six-month short-term disability period or benefit, both parties argue that the material inquiry is what Pioneer Bank knew in July of 2006.  Pioneer Bank knew that Clayton was not released to perform the essential functions of her position. Clayton contends, however, that, as of July of 2006, Pioneer Bank knew Clayton planned to return to work when her short-term disability leave expired the next month, and that allowing Clayton to complete this leave period would not cause it any undue hardship.

Specifically, Clayton contends that, on July 5, 2006, a few weeks before Clayton's short-term

disability was set to expire, and a few weeks before she was expected to return to work, Pioneer

Bank sent Clayton correspondence confirming that she was on leave status.  See July 5, 2006 e-mail.

Pioneer Bank maintains that Clayton unfairly characterizes Smith's statements in the July 5, 2006

e-mail, and that Clayton is expanding the phrase "I spoke with Shirley this morning regarding her

leave status" to stand for the proposition that Pioneer Bank placed Clayton on some form of

guaranteed short-term disability leave.  Response ¶ 6, at 3.

The Tenth Circuit has "consistently held, however, that an employee's request to be relieved

from an essential function of her position is not, as a matter of law, a reasonable or even plausible

accommodation." Id.  An employer is not required to wait indefinitely for an employee to recover."

Brockman v. Wyo. Dep't. of Family Servs., 342 F.3d at 1168.  Moreover, "[a]n accommodation that

would result in other employees having to work harder or longer hours is not required."  Milton v.

Scrivner, Inc., 53 F.3d at 1124.  Specifically, "a request for indefinite leave cannot constitute

'reasonable' accommodation -- such a leave request does not allow the employee to perform the

essential functions of the job in the near future."  Cisneros v. Wilson, 226 F.3d at 1129 (emphasis

in original).

There is evidence, however, that Clayton's request for four-weeks of additional leave or

benefit was not "indefinite."  Dr. Vega indicated, in February of 2006, that Clayton would need to

take six months off, and be incapacitated until at least August of that year.  See Motion, Exhibit 3,

Physician's Certification at 1 (dated February 22, 2006)(stating "incapacitated for 6 mo or more").

Clayton relayed this information to Smith.  See Complaint ¶ 8, at 2; Physician's Certification at 1-2

(advising that Clayton is incapacitated from work for at least 6 months because of shortness of

breath secondary to her heart condition).  On July 5, 2006, Clayton notified Pioneer Bank that she

expected to return to work at the end of the short-term disability-leave period.  See Motion ¶ 7, at 3; Testimony of Shirley Clayton at 16:10-17:15.  Clayton states that, on July 5, 2006, Clayton spoke with Smith and stated that she was going to insist that Dr. Vega release her to work on August 16, 2006.  See Testimony of Shirley Clayton at 16:10-17:15.

As the Tenth Circuit noted in Cisneros v. Wilson, Clayton's "own belief is not sufficient to create a triable issue of fact, especially where . . . her belief is inconsistent with the evidence from her own doctors."  226 F.3d at 1130-31.  In Cisneros v. Wilson, the plaintiff's statement in her affidavit that she believed she could have returned to work was "not the evidence necessary to establish that she was capable of performing the essential functions of her position."  Id. at 1131.  Clayton, however, has produced more evidence than the plaintiff in Cisneros v. Wilson, because Dr. Vega gave her an expected duration of her impairment -- until August of 2006.  Although Clayton has not conclusively established if or when she could return to work, there is a genuine issue of material fact whether her leave or benefit accommodation request was reasonable.  The leave or benefit Clayton requested was not indefinite because Clayton and Dr. Vega anticipated that her disability would end in August of 2006.

The Court cannot ignore that Pioneer Bank had allowed for Clayton to remain on short-term disability leave or benefit at least until the end of August, and then terminated her a few days after she confirmed her plans to return, in trying to reach a decision about Clayton's employment.  Moreover, Pioneer Bank has admitted that it would not have suffered any undue hardship by allowing her to complete her scheduled short-term disability leave, although it contends that it had no assurance of when Clayton would return to work.  Dr. Vega's estimate of when Clayton may be released to return to work arguably provided an "expected duration of her impairment."  Although

-41-

the ADA did not require Pioneer Bank to accurately predict the outcome of Clayton's August doctor appointment as it was trying to reach its decision in July 2006, it did require that Pioneer Bank make reasonable accommodations to Clayton.  There is a genuine issue of material fact whether the additional four-weeks of leave or benefit that Clayton requested was a reasonable accommodation under the circumstances.

It may be that the parties have presented all the evidence that they have, and that the trial -- especially the bench trial -- will not appreciably help the Court make the decision it will inevitably have to make.  In that sense, the Court is sympathetic to the parties' failure to secure a ruling short of a trial that may provide little more light on the subject.  Nevertheless, the Court's role on a rule 56 motion is limited.  It may determine whether there is a genuine issue of material fact, and not decide that issue.  Here, while Clayton was not able to return to the essential functions of her position at any time before her termination,  there is a genuine issue of material fact whether Clayton's request for four weeks of additional leave or benefit was a reasonable accommodation under the circumstances.  Moreover, there is no indication whether the parties may have more evidence to present at trial.  In any case, the place to resolve disputed facts is after trial, not on summary judgment, even if both parties contend that there is no dispute of facts and the issue for the factfinder is largely an application of the law to the facts.

### C.    PIONEER BANK HAS STATED A LEGITIMATE, NONDISCRIMINATORY REASON FOR TERMINATING CLAYTON'S EMPLOYMENT.

At the June 30, 2008 hearing, Pioneer Bank argued that it had a legitimate, nondiscriminatory reason for terminating Clayton: Her absence from work.  See Tr. at 56:16-17 (Patterson).  Pioneer Bank contended that it terminates employees who do not attend work regardless of the cause for their nonattendance.  See id. at 57:12-15 (Patterson).  Pioneer Bank argued that Clayton was not

treated any differently than an employee who does not attend work for a given period of time, and was, in fact, treated better than some employees because it paid her insurance premiums and "did other things for her during the eight month period prior to her termination."  Id. at 57:15-22 (Patterson).

Clayton argues that Pioneer Bank opposes her motion by simultaneously asserting two conflicting positions.  See Reply at 1 (internal quotation marks and citation omitted).  Clayton contends that Pioneer Bank's arguments are irreconcilable, because Clayton was completely disabled from working and was entitled to short-term disability leave or benefit because she met Pioneer Bank's definition of long-term disability.  See id.  Clayton maintains that, "at the very least, [she] was regarded by Pioneer Bank as having a complete impairment which prevented her from working, which equates to a disability under 42 U.S.C. § 12102."  Id. Clayton asserts that "[c]onversely, [her] inability to perform the essential functions of her position while she remained disabled from work means she is not qualified under the ADA if, and only if, there was no reasonable accommodation available."  Id. at 1-2.  Clayton contends that, because Pioneer Bank has admitted that it would not have suffered undue hardship by "allowing [her] to complete her scheduled short term disability leave[, t]his proves there was a reasonable accommodation available and that [she] was a qualified individual under the ADA."  Id. at 2.

While there is tension in Pioneer Bank's assertions, the Court believes that Pioneer Bank has stated a legitimate, nondiscriminatory reason for terminating her.  Physical attendance in the workplace is an essential function of most jobs.  See Mason v. Avaya Comm'ns, Inc., 357 F.3d at 1119-20.  Palmer's affidavit demonstrates that Pioneer Bank attempted to accommodate Clayton's absence:

-43-

> Ms. Clayton's failure to perform her duties created a hardship on the remaining employees in the Statement preparation Department . . . The two remaining employees attempted to perform the job duties of Ms. Clayton in addition to their own, but they were not able to complete all of the job functions and responsibilities for the department while Ms. Clayton was absent . . . In April, 2006, the [Pioneer] Bank transferred another employee temporarily into the Statement Preparation Department to assist with the Department's work load requirements because the two remaining employees were unable to handle the duties of Ms. Clayton's position in addition to their own responsibilities.

Palmer Aff. ¶¶ 25-27, at 3-4.  Terminating an employee who does not show up for work for an extended period of time and who used up all of his or her leave is not disability discrimination.  See Basith v. Cook County, 241 F.3d at 933 (7th Cir. 2001)(terminating an employee because they can no longer perform the essential functions of her position is a legitimate, nondiscriminatory reason for termination).  Pioneer Bank has thus articulated a legitimate, nondiscriminatory reason for terminating Clayton.

### D.      THERE IS A GENUINE ISSUE OF MATERIAL FACT WHETHER PIONEER BANK'S STATED REASON WAS PRETEXTUAL.

Because Pioneer Bank has produced a  non-discriminatory explanation for the termination, the burden shifts back to Clayton, who is required to offer specific evidence that demonstrates Pioneer Bank's reasoning is pretextual. See Branson v. Price River Coal Co., 853 F.2d at 771-72. Clayton has an obligation to provide sufficient evidence that could cause a reasonable factfinder to disbelieve Pioneer Bank's legitimate, non-discriminatory reason for terminating her. See Guyton v. Ottawa Truck Div., Kalmar Indus. U.S.A., Inc., 15 Fed.Appx. at 577.  The relevant inquiry is not whether Pioneer Bank's proffered non-discriminatory reasons "were wise, fair, or correct," but whether Pioneer Bank "honestly believed those reasons and acted in good faith upon those beliefs." Id. (internal quotation marks omitted).   A plaintiff typically shows pretext in one of three ways:

> [(i)] with evidence that the defendant's stated reason for the adverse employment

> action was false; [(ii)] with evidence that the defendant acted contrary to a written
> company policy prescribing the action to be taken by the defendant under the
> circumstances; or [(iii)] with evidence that the defendant acted contrary to an
> unwritten policy or contrary to company practice when making the adverse
> employment decision affecting the plaintiff. A plaintiff who wishes to show that the
> company acted contrary to an unwritten policy or to company practice often does so
> by providing evidence that he was treated differently from other similarly-situated
> employees who violated work rules of comparable seriousness.

Green v. New Mexico, 420 F.3d at 1193.

Clayton contends that Pioneer Bank's "specific timing . . . smacks of an intentional decision to strike before she could return. This was most likely motivated by [Pioneer B]ank's fear over the seriousness of [Clayton]'s heart condition and a possible relapse." Motion at 6-7. Clayton's assertion that Pioneer Bank's nondiscriminatory, legitimate reason for terminating her is pretext is not sufficient to support summary judgment in her favor. See Branson v. Price River Coal Co., 853 F.2d at 771-72 (stating that a plaintiff's mere conjecture that her employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment). On the other hand, Clayton is not required to present evidence of actual discrimination to establish pretext. She must only produce "[e]vidence tending to show pretext [that] permits an inference . . . [Pioneer Bank] acted for discriminatory reasons.'" Mirzai v. State of N.M. Gen. Servs. Dep't, 506 F.Supp.2d at 776. Here, the Court believes that the timing of the termination -- after the e-mail and call on July 5 and shortly before her expected return -- raises an inference of discrimination.

It is also possible that Clayton is attempting to demonstrate pretext by maintaining that Pioneer Bank's

> response continues to quibble about whether the six month short term disability
> period was "leave[,"] and repeatedly claims it never offered "short term disability
> leave." This argument cannot stand in the face of [Clayton]'s supplemental exhibit
> in support of her Motion to Compel, the July 21, 2006, letter from [Pioneer Bank]'s
> Human Resources Director, Lara Smith, which notes that, "after reviewing your

current **leave** status[," Clayton] was placed on '"short term disability **leave**" after her FMLA leave expired.

Reply at 3 n.2 (emphasis and bolded in original).  Pioneer Bank's Employee Manual states: "Pioneer does not provide group insurance coverage for short-term disability.  It does, however, from time to time, at its sole discretion, give employees payments for a portion of income lost while they are totally or partially disabled but have not yet met the 180 day elimination period set forth in Pioneer's Group Long-Term Disability Insurance Policy."  Employee Manual at 15-16.  It further states that, "[a]s guidance in making this final decision, the CEO of Pioneer will refer to all of the requirements for disability coverage contained in Pioneer's Group Long-Term Disability Insurance Policy."  Id. Assuming that Clayton's characterization of Smith's statement is correct, Pioneer Bank's distinguishment between short-term disability leave versus short-term disability benefit may demonstrate that its reason for terminating Clayton -- her total absence from her employment -- was pretextual.  In other words, Pioneer Bank considered its short-term disability benefit to be leave or the equivalent of leave.  There may be a genuine issue of material fact whether Pioneer Bank failed to follow its standard company practice regarding that benefit or leave.  Palmer explained that:

> Pioneer Bank funds a self-insured insurance type benefit payment program for its employees who may face a short term loss of income due to a short term disability and the benefit is provided, up to a maximum of one hundred and eighty (180) days, after a disabling event to cover the gap until the employee is eligible for long term disability insurance benefits.

Palmer Aff. ¶ 16, at 2.  Although it appears, from information in the Employee Handbook and Palmer's affidavit, that Pioneer Bank followed its policy of giving Clayton short-term disability benefits, there is an issue whether Pioneer Bank illegally terminated Clayton while she was on leave. Clayton contends that Smith's e-mail suggests that Clayton was placed on short-term disability leave after her FMLA leave expired, while Pioneer Bank contends that it followed its policies by paying

Clayton a short-term disability benefit.

The Court believes that the distinction, if any, between short-term disability leave and short-term disability benefit may be material to whether Pioneer Bank's stated nondiscriminatory reason for terminating Clayton was pretextual. Although Clayton has not demonstrated that Pioneer Bank's stated reason for terminating her was false, there is a genuine issue of material fact whether Pioneer Bank acted contrary to a company practice. See Green v. New Mexico, 420 F.3d at 1193 (stating that pretext may be demonstrated by showing that the employer acted contrary to an unwritten policy or company practice). If Clayton was placed on leave, as she contends that Smith's e-mail shows, and Pioneer Bank had a company policy of placing employees on leave without terminating them, then Pioneer Bank may have violated that company policy by terminating Clayton. Although it is undisputed that Pioneer Bank provided Clayton with the short-term disability benefits for a period between May 25, 2006 and July 28, 2006, see Letter from Michelle R. Morgan, Benefit Specialist, Jefferson Pilot Financial Insurance Company, to Laura Smith of Pioneer Bank regarding Shirley Clayton (dated September 1, 2006)("We have completed our review and benefits have been approved beginning 05/25/06 and will terminate as of 07/28/06, because she no longer meet[s] the definition of disability as stated in this policy."), there is a genuine issue of material fact regarding the meaning of the term "leave" as Smith used it in her July 21, 2006 e-mail. There is a genuine issue of material fact whether Clayton has demonstrated pretext by showing that Pioneer Bank may not have followed its company practice regarding the short-term disability leave or benefit.

### E.    CLAYTON IS ENTITLED TO SUMMARY JUDGMENT ON PIONEER BANK'S DEFENSE OF UNDUE BURDEN OR HARDSHIP, BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL FACT.

Undue hardship "may be a defense to a charge of discrimination . . . that a requested or

necessary accommodation would impose an undue hardship on the operation of the covered entity's

business."  29 C.F.R. § 1630.15(d).   "Undue hardship" means an action that requires significant

difficulty or expense.  42 U.S.C. § 12111(10)(A).  The burden is on Pioneer Bank to prove its

defense of undue burden or hardship.  See  Colo. Cross Disability Coal. v. Hermanson Family Ltd.

P'ship I, 264 F.3d at 1003 (stating that "the entity bears the burden of persuasion regarding . . .

undue burden.").

      Palmer testified at his deposition that Clayton's absence would not be an undue hardship on

Pioneer Bank:

> Q.    And how much of a hardship would it have posed on your bank, financially
> or otherwise, to continue doing what had been done from March 1st through
> July 21st, to continue doing that up until August the 16th, would that have
> posed an undue hardship in terms of making sure that the people working in
> this department have a temporary -- or whatever they needed so you could
> wait to see if your internal (inaudible)?
>
> A.    I'd have to say no, it wasn't an undue hardship, but it was -- as far as
> precedence goes, we have done for Shirley things we haven't done for other
> people.  And we did for Shirley things that we are presently not doing for
> other people.
>
> Q.    Well, we're not talking about anything except you getting an e-mail the
> beginning of July saying "We need about another month and this lady can
> come back to work."  And I think you've answered my question, but I want
> to make sure I'm clear.  From the time you get the e-mail regardless of what
> you've done in the past, from the time you get that e-mail, it would not
> impose any kind of undue hardship for you to wait the amount of time
> mentioned in the e-mail written by your employee, correct.
>
> A.    No.

Palmer Testimony at 134:7-135:6 (emphasis in original).  In his affidavit in response to Clayton's

motion for summary judgment, however, Palmer averred that Clayton's absence imposed a hardship

on the employees remaining in the Statement Preparation Department, because the employees could

do all that Clayton's job functions and responsibilities required.  See Palmer Aff. ¶¶ 25-26, at 3-4.

Nevertheless, Clayton is entitled to summary judgment on Pioneer Bank's defense of undue burden

or hardship.

While Palmer averred Clayton's absence created a hardship, he testified that Clayton's

absence would not have imposed an undue burden or hardship on Pioneer Bank.  Most, if not all

accommodations, create some hardship.  The issue is whether the accommodation will create an

undue hardship or burden.  Moreover, Pioneer Bank had been putting up with the hardship or burden

for many months, also undercutting any defense that the accommodation of four more weeks would

present an undue hardship or burden.  There is no evidence that Pioneer Bank had complained of

the hardship or considered the accommodation an undue burden at any time before the termination.

Thus, there is no genuine issue of material fact whether the hardship imposed on Pioneer Bank was

undue, and Clayton is entitled to summary judgment on Pioneer Bank's undue burden defense as

a matter of law.[2]

In sum, Clayton is not entitled to summary judgment as a matter of law on liability.  There

are genuine issues of material fact whether the request for four weeks of additional leave that she

requested as an accommodation was reasonable and whether Pioneer Bank's stated reason for her

_____

[2]  While there may be some tension in the Court's determination that there is a genuine issue of material fact whether request of an additional four weeks leave was a reasonable accommodation, one of the elements of Clayton's prima-facie case, and the Court granting Clayton summary judgment on Pioneer Bank's defense of undue burden, the Court believes the genuine issue of material fact regarding the reasonableness of the accommodation is whether Clayton's request was for an additional month --  a finite period of time -- or whether she was essentially requesting indefinite leave, while the issue on the defense is how much burden the accommodation would impose.  There may be situations where a court may deny summary judgment on reasonable accommodation, and there may also, for the same reasons, be an issue of material fact on an undue-burden defense.  Here, however, the factual issues for the prima-facie case element and for the defense are different.

termination was pretextual.  Clayton is, however, entitled to summary judgment as a matter of law on Pioneer Bank's undue burden defense, because there are no genuine issues of material fact whether her absence was an undue hardship or burden.

## III.   THE COURT WILL EXERCISE JURISDICTION OVER CLAYTON'S NMHRA CLAIM.

Clayton notes in her motion that, "[a]s a general matter, New Mexico state courts refer to federal law for interpretation of the basic elements of proof and defenses under the [NMHRA]." Motion at 6 n.1.  Clayton, however, makes no, or little, effort to demonstrate that she is entitled to summary judgment on her NMHRA claim.  See Motion at 6 (stating, "[i]n short, the undisputed material facts set forth above establish a prima-facie case under both the ADA and the New Mexico Human Rights Act.").   Moreover, there is a question whether the Court has subject-matter jurisdiction over her state-law appeal.

Pioneer Bank acknowledges that 28 U.S.C. § 1367 generally provides the federal district court with discretion to assume supplemental jurisdiction over a state-law claim.  Pioneer Bank contends, however, that N.M.S.A. 1978, § 28-1-13 "provides that any further appeal associated with the Human Rights Division action should be directed to the New Mexico Supreme Court, which would be impossible if this Court were to assume supplemental jurisdiction."  Response at 10 n.1. Pioneer Bank further contends that the plain language of N.M.S.A. 1978, §§ 28-1-13(A) and (C) imply that "the State District Court has exclusive jurisdiction over Plaintiff's appeal from the adverse ruling of the New Mexico Human Rights Division."  Response at 10 n.1.  N.M.S.A. 1978, § 28-1-13(A) provides that"[a] person aggrieved by an order of the commission may obtain a trial de novo in the district court of the county where the discriminatory practice occurred or where the respondent does business by filing a notice of appeal within ninety days from the date of service of

the commission's order."  Id. (emphasis added).

The Court has previously noted that "[i]f such waiver [under N.M.S.A 1978, § 28-1-10(J)] is not sought or granted, the complainant must exhaust administrative remedies before seeking to appeal to the state judiciary."  Negrete v. Maloof Distrib. L.L.C., No. CIV 06-0338 JB/LFG, 2006 WL 4061178 at *1 n.1 (citing N.M.S.A. 1978, § 28-1-13). N.M.S.A 1978, § 28-1-10(J) provides "[t]he complainant may seek a trial de novo in the district court in lieu of a hearing before the commission, provided the complainant requests from the director, in writing, a waiver of complainant's right to [a] hearing within sixty days of service of written notice of a probable cause determination by the director." Id.   In Roybal v. City of Albuquerque, the Honorable Sam Bratton, United States District Judge for the District of New Mexico, declined to exercise "pendent jurisdiction" over the plaintiff's NMHRA claim, in light of the plaintiff's request for the court to expand New Mexico law and  because "[t]he parties have brought forward no case, and this court has found none, in which the federal court has assumed jurisdiction of a claim brought under the New Mexico Human Rights Act under these circumstances."  653 F.Supp. at 108.  Judge Bratton noted that, "[a]fter exhausting the grievance procedure, the state district court has exclusive jurisdiction to hear an appeal from the order of the New Mexico Human Rights Commission." Id. (citing N.M.S.A. 1978, § 28-1-13(A))(emphasis added).

The Court believes exercise of its jurisdiction over Clayton's NMHRA claims is appropriate. 28 U.S.C. § 1367 provides:

The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the

district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Id.  The Court acknowledges that the appellate process, which New Mexico's Legislature created in N.M.S.A. 1978, § 28-1-13 contemplates, by its express language, exclusive jurisdiction over appeals from the New Mexico Human Rights Commission in the state district courts.  The New Mexico Legislature cannot, however,  deprive the federal court of jurisdiction that Congress has given it.  See Ry. Co. v. Whitton's Adm'r, 80 U.S. 270 (1871)("Whenever a general rule as to property or personal rights or injuries to either, is established by State legislation, its enforcement by a Federal court in a case between proper parties is a matter of course, and the jurisdiction of the court, in such a case, is not subject to State limitation.");  Atlas R.R. Constr. Co. v. Columbus & Greenville Ry. Co., 190 F.Supp.2d at 910 (stating that "[i]t is axiomatic that federal diversity jurisdiction cannot be affected, restricted, or defeated by state legislation giving state courts exclusive jurisdiction over the matter involved.");  Nottingham Constr. Co. v. City of Waveland, Mississippi, 2008 WL 611652 at *2 (explaining that "federal jurisdiction cannot be defeated by a state statute prescribing the court in which the action is to be brought.")(internal quotation marks omitted); Akin v. La. Nat'l Bank of Baton Rouge, 322 F.2d at 754 (rejecting the argument that a federal court did not have jurisdiction in a probate case, because "[f]ederal jurisdiction cannot be defeated by a state statute prescribing the court in which the action is to be brought."). The Court does not believe that this expression by the New Mexico legislative presents an "exceptional circumstance . . . [and a] compelling reason . . . for declining jurisdiction." 28 U.S.C. § 1367.  The

federal court in this district routinely tries the federal diversity claim and the NMHRA claim together, and given that the state law clearly tracks federal law, it is most efficient to keep the two claims together and try them together.  Thus, the Court will continue to exercise jurisdiction over Clayton's NMHRA claim.  See Negrete v. Maloof Distrib. L.L.C., 2006 WL 4061178 at *4 (noting that "[t]he decision to exercise supplemental jurisdiction is within the Court's discretion.").

While there may be some differences between the ADA and state law in what constitutes a disability, if anything, state law is broader, and the Court has already determined that there was a disability under federal law.  The remainder of the body of law appears, for purposes of this motion, similar and requiring the same disposition for the NMHRA claim as for the ADA claim. Accordingly, the Court will deny the motion for summary judgment on the NMHRA claim because of the existence of genuine issues of material fact regarding the existence of a reasonable accommodation and whether the stated reason for termination was a pretext.

**IT IS ORDERED** that the Plaintiff's Motion for Partial Summary Judgment is denied in part and granted in part.  The Plaintiff Shirley Clayton is entitled to summary judgment on Pioneer Bank's defense of undue burden or hardship.  The Court denies Clayton summary judgment on her ADA and NMHRA claims.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

James P. Lyle
The Law Offices of James P. Lyle, P.C.
Albuquerque, New Mexico

  *Attorneys for the Plaintiff*

Barbara Ann Patterson
Pittman Law Firm, P.C.
Roswell, New Mexico

  *Attorneys for the Defendant*